(120 App. Div. 201.)

In re JEROME AVENUE IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 21, 1907.)

1. MUNICIPAL CORPORATIONS—STREETS—DISCONTINUANCE.
    Under the express terms of Laws 1895, p. 2037, c. 1006, § 2, a portion of a street to be discontinued does not cease to be a street until the substitute street is physically opened.

2. SAME—OPENING STREETS—BENEFITS—EXEMPTIONS.
    New York Charter, Laws 1897, p. 342, c. 378, § 970, continued in Revised Charter, Laws 1901, p. 405, c. 466, provided that compensation for lands taken in opening streets should be made to those to whom the damage should be deemed to exceed the benefit for the excess. Laws 1879, c. 310, p. 397, prohibits the imposition of any assessment on land used for cemetery purposes. *Held*, that the 1879 act does not prevent the deduction of benefits from damages in a proceeding under such charter provision.

3. SAME—ADOPTION OF CHARTER—EFFECT.
    Though a proceeding to open a street in New York City was authorized by the board of street opening and improvement before the adoption of the charter, the petition for the appointment of the commissioners having been made after it went into effect, the action of the commissioners as to their general duties and the duties of the city as to payment for the acquisition of the land, are governed by the charter.

4. SAME—LIABILITY OF OWNERS.

> Under the express terms of Greater New York Charter, Laws 1897, pp. 342, 347, 349, 362, c. 378, §§ 970, 980, 985, 1004, providing for the assessment of damages and benefits in street opening proceedings, not only the lands but also the owners thereof, are affected; a personal liability being made upon them.

Appeal from Special Term, New York County.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John F. Dunn and William B. Ellison, Corp. Counsel (Thomas C. Blake of counsel), for appellant.

Joseph A. Flannery, for respondent.

CLARKE, J. This is an appeal by the city from an order of the Special Term sustaining objections of the Woodlawn Cemetery Association to assessments levied against its property, designated as benefit parcels 8 and 22, and striking the said'assessments from the report of the commissioners of estimate and assessments, and thereupon confirming the report as so corrected and amended. This proceeding, which was for the purpose of condemning land incident to a change in the location and direction of Jerome avenue involving the taking of a strip of land to the west of the former avenue and the abandonment and discontinuance of another strip on the east thereof, was authorized by a resolution adopted by the board of street opening and improvement of the former city of New York on June 18, 1897, which resolution directed that the entire cost and expense thereof be borne by the property benefited, as authorized by section 970 of the consolidation act (chapter 410, p. 267, Laws 1882, as amended). The proceeding was instituted by a petition dated September 15, 1898, after · the creation of Greater New York. Title in the land to be taken pursuant to the resolution of the board of street opening and improvement vested on the filing of the oaths of the commissioners, May 23, 1899. The report of the commissioners was signed on September 21, 1903. They awarded to the Woodlawn Cemetery Association for damage parcels 2a and 3 the sum of $23,057.43. Damage parcel 2a is the easterly half of the old road known as the "Mile Square Road," and damage parcel 3 is a gore lying between said road and the westerly side of Jerome or Central avenue as legally opened June 21, 1870. The commissioners assessed for benefit to parcels 8 and 22 on the benefit map belonging to the Woodlawn Cemetery Association a total of $17,613.85. Benefit parcel 8 is directly opposite the locus in quo, and includes a considerable gore contained within the limits of Jerome avenue as legally opened June 21, 1870, said gore to be discontinued and closed in these proceedings, and parcel 22 is to the north of Mosholu avenue and the locus in quo. The cemetery

association objected to these assessments for benefit, alleging: "That said assessment is illegal and void. The said lands of your objector are exempt from said assessment under chapter 310, p. 397, of ·the Laws of 1879." By an order made on October 28, and entered on November 2, 1904, the Special Term confirmed the report of the commissioners as to the amount of the award for damages, reserving certain questions as to ownership, and confirmed the report as to assessments for benefit, except as to the assessments upon parcels 8 and 22, which were reserved for future consideration. By order made and entered on April 3, 1905, it was ordered that the objections to the assessments levied against the property of the Woodlawn Cemetery benefits parcels No. 8 and 22 be sustained and·be stricken from the report of the commissioners, and that the report of the commissioners as to assessments for benefit as amended and corrected be confirmed. From this order the city appeals.

Benefit parcel No. 8 includes a portión of Jerome avenue which had been legally acquired in 1870, but which was shown on the final map of the Twenty-Third and Twenty-Fourth Wards, adopted pursuant to chapter 545, p. 965, of the Laws of 1890, as a part of Jerome avenue to be discontinued and closed. Of course, this portion had not been, and could not have been, used for cemetery purposes since 1870. It had been used ever since it was constructed as a street, and under section 2 of chapter 1006, p. 2037, of the Laws of 1895, would not cease to be a street until the new Jerome avenue was physically opened subsequent to the acquisition of the benefit from this improvement. Johnson v. Cox, 42 Misc. Rep. 301, 86 N. Y. Supp. 601. Section 970 of the Charter (chapter 378. p. 342. of the Laws of 1897, the same section being continued in the Revised Charter, chapter 466, p. 405, ·of the Laws of 1901), in force when the application for the appointment of commissioners was made, provided that the lands, tenements, and hereditaments that may be required in any street opening proceeding "may be taken therefore and compensation and recompense made to the parties and persons, if any such there be, to whom the loss and damage thereby shall be deemed to exceed the benefit and advantage thereof for the excess of the damage over and above the value of said benefit." Therefore, under said section, as the benefit found due to the Woodlawn Cemetery amounted to $17,613.85, and the damages amounted to $23,057.43, compensation is only due to the amount of excess of the damage over and above the value of said benefit, to wit, $5,443.68.

The cemetery association, however, claims that it is entitled to the whole amount of the award for damages, $23,057.43, and that the amount of the award for benefit cannot be taken into consideration because of the provisions of chapter 310, p. 397, of the Laws of 1879, entitled "An act to prevent the sale of lands used for cemetery purposes," which is as follows:

"Section 1. No land actually used and occupied for cemetery purposes shall be sold under execution or for any tax or assessment, nor shall such tax or assessment be levied, collected or imposed, nor shall it be lawful to mortgage such land or to apply it in payment of debts so long as it shall continue to be used for such cemetery purposes.

"Sec. 2. Whenever such lands shall cease to be used for such cemetery purposes, any judgment, tax or assessment which, but for the provisions of this act, would have been imposed, shall thereupon forthwith, together with the interest thereon, become and be a charge upon such land and collectible out of the same."

This court has recently held, in the Matter of Perry Avenue, 103 N. Y. Supp. 1070, that under the provisions of this act no assessment could be imposed upon lands owned by the Woodlawn Cemetery. The underlying reason for that decision was that it was the intent of the act to prevent the possibility of disturbance of the graves of the dead by a sale of the land for a tax or assessment. It is, however, a settled principle in the interpretation of statutes of exemption that they should be strictly construed. The legislative intent, evidenced by the title of the act, and its language, though expressed somewhat inartificially, is to protect such lands, and to provide that they should retain their character. But there is no necessity for extending protection to the graves of the dead so far as to provide for a gift to the corporation owning the cemetery; that is, a corporation whose certificates are valuable, and which divides among its members considerable profits. American Exchange National Bank v. Woodlawn Cemetery Association, 105 N. Y. Supp. 305.

Section 1004 of the charter provides that an assessment for benefit in a street opening proceeding shall be, when confirmed, not only a lien upon the land upon which such assessment has been imposed in the commissioners' report, but shall also be a personal liability on the owners for the benefit which they have derived from the improvement. Although this proceeding was authorized by the board of street opening and improvement prior to the adoption of the charter, the petition for and the appointment of the commissioners was after the charter went into effect. Therefore the action of the commissioners, with reference to their general duties and the duties of the city with reference to payment for the acquisition of these lands, are governed by the charter provisions. Matter of East 175th Street, 49 App. Div. 114, 63 N. Y. Supp. 468. As pointed out supra, section 970 of the charter provides for compensation for the excess of damages over and above the value of the benefit. By section 980 of the charter it is provided that the commissioners shall make a "just and equitable estimate and assessment also of the value of the benefit and advantage of such improvement to the respective owners, lessees, parties and persons respectively entitled unto or interest in the lands, tenements, hereditaments and premises not required for the said improvements." Section 985 of the charter provides that the report of the commissioners shall contain a tabular abstract showing the amount "of the benefit and advantage to each and every owner, lessee, party or person entitled or interested in any lands, tenements, hereditaments or premises affected by the improvements."

All of these provisions indicate an intention to equitably adjust the damages and the benefit of such a proceeding, and all the provisions touching the subject contemplate not only the lands, but the owners thereof, and make a personal liability upon such owners. By the action of the Special Term in striking out the assessment from the report of

the commissioners, which shows both damages and benefits, and the value thereof, it is impossible to make the equitable adjustment contemplated by the statutes. The Legislature, in prohibiting the imposition of an assessment which would become a lien upon the land, for the enforcement of which the land could be sold, could not have had in contemplation such a result as in the case at bar, by which, although the property of the owners is concededly benefited to the extent of $17,613.85, and damaged $23,057.43, those owners are to receive the total benefit, as well as the damages, in effect being recompensed to the extent of $40,671.28. Such a result is not equitable. It is not just. The law does not require it.

If no portion of the land of the cemetery association had been taken, if its property had simply been within the area of the assessment for benefit, it could not, under our decision in the Perry Avenue Case, have been assessed; but part of its property has been taken, and for that property it is entitled, under section 6 of article 1 of the Constitution, to just compensation. When it has been ascertained in the manner provided by law that it has been benefited by the improvements, it seems to me that that benefit is a part of the just compensation which it receives for the taking of part of its property, and that it is entitled to receive in money only the difference between that benefit and the damages, and so it has been provided in the sections cited, and, so far as I know, no question has ever been raised as to the constitutionality of that method of providing for the payment of the just compensation required by the Constitution.

The fact that an assessment for benefits cannot be levied and enforced by sale does not dispose of the fact that the benefit has been received and should be taken into consideration in the payment of the amount due. It seems to me that full effect can be given to the provisions of chapter 310, p. 397, of the Laws of 1879, prohibiting the levying, collecting, or imposing of an assessment upon the cemetery land in this case, and at the same time observe the letter and spirit of the charter provisions, by restoring to the report of the commissioners their finding as to the amount of benefit to the Woodlawn Cemetery Association, and providing in the order that such amount shall not be assessed upon the land, but that there shall be paid to the said association in compensation for its land taken in this proceeding the amount of $5,443.68, the excess of damages over and above the value of the benefit.

The order appealed from should be so modified, and as modified affirmed, without costs. All concur.