THE ESTATE OF S. G. WILDER, LIMITED, *v.* INTER-ISLAND STEAM NAVIGATION COMPANY, LIMITED.

## No. 1191.

RESERVED QUESTION FROM CIRCUIT COURT, FIRST CIRCUIT. HON. J. T. DEBOLT, JUDGE.

SUBMITTED OCTOBER 14, 1919.          DECIDED OCTOBER 15, 1919.

KEMP AND EDINGS, JJ., AND CIRCUIT JUDGE FRANKLIN IN PLACE OF COKE, C. J., ABSENT.

LANDLORD AND TENANT—*leases—covenants.*

A covenant in a lease that the lessee will during the term pay all taxes, water rates and assessments of every description which may be payable in respect of said premises to whomsoever levied or assessed is an obligation to pay assessments for street improve-

ments even though such assessments are levied under an ordinance passed subsequent to the execution of the lease.

OPINION OF THE COURT BY EDINGS, J.

The plaintiff is the lessor named in a certain indenture of lease wherein the Wilder Steamship Company, Limited, is named as lessee, which said indenture of lease is dated September 30, 1904. The defendant is the assignee of said lessee with the permission of the lessor, and, as such assignee, is required to observe and carry out all of the provisions and covenants in said lease contained required to be observed and performed by the lessee named therein. Pursuant to law an assessment for street improvements was levied against the property demised by said lease amounting to the sum of one thousand eight hundred and fifty-three and 75/100 dollars ($1853.75), which said assessment was due and payable on the 9th day of May, 1919, or in yearly instalments beginning on said day. Demand was made by plaintiff upon defendant that it pay said assessments but defendant refused to pay the same, and on said 9th day of May, 1919, plaintiff paid the entire amount thereof and instituted an action against defendant to recover said amount; that one of the covenants in said lease contained is as follows: "And the lessee doth hereby covenant with the lessor that it will during said term pay the said rent at the time and in the manner aforesaid and also will from time to time pay all taxes, water rates and assessments of every description which may be payable in respect of said premises to whomsoever levied or assessed."

Plaintiff claims that under said covenant above quoted defendant is legally required to pay said street assessment, which claim defendant denies.

The circuit judge before whom the cause was pending

reserved the following question for the consideration of this court:

"Whether the covenant above quoted requires the lessee named in said lease, or its assignee, to pay the assessment levied against the demised premises for the purpose of street improvements, as indicated by the exhibits attached to said complaint."

The exhibits referred to show the levy of the assessment for street improvements, and the amount thereof, as herein set forth.

The plain and legal meaning of the phrase "assessments of every description," contained in the lease, includes every description of assessments for improvements classified as such by the governmental power imposing the obligation. This imposition of a burden for street improvements is almost universally termed an assessment by authorities upon this subject, and this meaning has been adopted and used by this court whenever called upon to designate this species of tax. *Taylor* v. *City & County of Honolulu*, 25 Haw. 58; *McCandless* v. *City & County of Honolulu*, 24 Haw. 524. Municipal assessments, technically so-called, Cooley, Taxation, 416; Hilliard, Law of Taxation, 364. In *Taylor* v. *Palmer*, 31 Cal. 241, 254, the court say: "What, then, is the power of assessment, and, if any, what are its limitations? * * * At the time the Constitution was framed this word had, in the connection in which it is used, obtained a popular and legal signification which was well understood. Moreover, the provision of the Constitution in which it is found was borrowed from the Constitution of New York, where, as well as in other States, the word had already received a judicial interpretation. The Constitutional Convention must therefore be understood to have used the word in the sense in which it had been used in the Constitution from which it was

taken, which also was its popular sense. It was employed therefore to represent those legal burdens imposed by municipal corporations upon property bordering upon an improved street or situated so near it as to be benefited by the improvement, for the purpose of paying the cost of the improvement." See also *Mardis* v. *McCarthy,* 162 Cal. 94, 101; *Palmer* v. *Stumph,* 29 Ind. 329, 334; *Hale* v. *City of Kenosha,* 29 Wis. 599. Assessments are not synonymous with taxes and include special amounts levied for betterments, as roads, etc. *Matter of City of New York,* 192 N. Y. 459; *Ittner* v. *Robinson,* 35 Neb. 133, 137.

There seems to be little conflict in the law upon the subject at the present day.

"A covenant that the lessee shall pay all rates, taxes, and assessments for which the premises shall be liable includes not only such charges as may be imposed by laws then in force, but also such as may be authorized by laws afterwards enacted." 16 R. C. L. Sec. 310.

"And if the tenant's covenant includes all burdens during the term, he is liable, even though the assessment is not laid or the law imposing the assessment is not passed until after the lease is made." Taylor, Landlord & Tenant, 8 ed., Sec. 398.

"Under a covenant to pay 'all taxes, assessments, rates and charges assessed or made on the demised premises,' the tenant is bound to pay an assessment upon the premises, although the act under which it was assessed was passed subsequent to the making of the lease. If the assessment is a permanent improvement to the property, as for the paving of the street, the laying of a sewer, or the building of a sluice, the tenant is nevertheless bound to pay it if it is a valid assessment, as if he desired to limit his liability he should have seen to it that the language of his covenant was restricted so as to cover only ordinary assessments or taxes." Wood, Landlord & Tenant, p. 691.

Nor can it be successfully contended that the parties

to the lease did not have in contemplation assessments of this nature as the statutes of this Territory (the Kingdom) contained, long prior to the execution of this lease, provisions for street and road improvements, and therein designated the obligation of abutting property owners as "assessments." Ch. VIII, S. L. 1870.

The question reserved to this court is answered in the affirmative.

*Frear, Prosser, Anderson & Marx* for plaintiff.
*Smith, Warren & Whitney* for defendant.